UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT HOLLAND,<br><br>        Plaintiff,<br><br>   vs.<br><br>C. SCHUYLER, et al.,<br><br>        Defendants. | 1:16-cv-01271-DAD-GSA-PC<br><br>**SCREENING ORDER**<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 1.)**<br><br>**THIRTY-DAY DEADLINE FOR PLAINTIFF TO FILE AMENDED COMPLAINT**<br><br>**ORDER FOR CLERK TO SEND PLAINTIFF A CIVIL COMPLAINT FORM** |

**I.    BACKGROUND**

Everett Holland ("Plaintiff") is a state prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. This case was initiated by a Complaint filed in Kern County Superior Court on September 29, 2015, case BCV-15-010047-DRL. On August 26, 2016, the case was removed to federal court pursuant to 28 U.S.C. § 1441(a) by defendants Sergeant R. Esmond, Associate Warden T. Haak, Correctional Officer (C/O) Hunley, C/O Maciejewski, and Associate Warden C. Schuyler. (ECF No. 1.)

The Complaint is now before the court for screening.

1

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison in Delano, California. The events at issue in the Complaint allegedly occurred at California Correctional Institution (CCI) in Tehachapi, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Sergeant (Sgt.) R. Esmond, Associate Warden T. Haak, Correctional Officer (C/O)

*///*

Hunley, C/O Maciejewski, Associate Warden C. Schuyler, and C/O Doe #1, who were employed at CCI during the relevant time period.

Plaintiff's allegations follow. On February 1, 2015, Plaintiff was placed in administrative segregation (Ad-Seg) for battery on an inmate. An inmate, Hougland, was discovered bleeding in Building 1 dayroom at approximately 2:45 p.m. Plaintiff and another inmate, who was Caucasian, were handcuffed and taken to a receiving and release holding cage and the program office, respectively. Plaintiff was strip-searched by the escorting officer, defendant Maciejewski, for contraband, with negative results. Registered Nurse Cay arrived and performed a full-body examination, whereby Plaintiff was stripped and examined for injuries. Nurse Cay discovered no injuries to Plaintiff, as his 7219 report reflects. Nurse Cay asked Plaintiff if he had anything to say, to which Plaintiff responded, "Why am I here?" (ECF No. 1 at 11:20.)[1] Nurse Cay then left the area.

Plaintiff then met with Sgt. Esmond. Plaintiff asked Esmond why he was there and asked if he could get dressed. Sgt. Esmond told Plaintiff that C/O Maciejewski had informed him that Plaintiff had a cut and blood on his hands, and that an inmate had just been battered. Plaintiff explained that he had nothing on his hands, Sgt. Esmond then asked to see Plaintiff's hands, palms down, then palms up. Sgt. Esmond asked Plaintiff, "What can you tell me?" (ECF No. 1 at 12:8.) Plaintiff responded that he could not tell him anything because he didn't know anything. Sgt. Esmond said, "That's not good, I have a confidential informant that told me a black inmate hit inmate Hougland." (ECF No. 1 at 12:11-13.) Plaintiff responded, "I'm sure that I'm not the only black inmate on this yard – why not ask Mr. Hougland who hit him?" (ECF No. 1 at 12:13-16.) Sgt. Esmond stated, "He doesn't remember but he'll recover it." (ECF No. 1 at 12:17-18.) Then Sgt. Esmond left.

///

///

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on Plaintiff's pagination of his Complaint.

Ten minutes later, Nurse Cay returned escorted by C/O Maciejewski. The nurse again examined Plaintiff's hands, this time more closely, for about five minutes. Then Maciejewski and Cay left.

Later that evening between 8:30 and 9:15 p.m., Sgt. Esmond returned and told Plaintiff he was being placed in Ad-Seg for assaulting Mr. Hougland. Plaintiff said he had not battered anyone and sarcastically added, "Based on what, meeting the description of being black?" (ECF No. 1 at 13:3-4.) Sgt. Esmond left and returned with a lock-up order for Plaintiff to sign. Plaintiff said that he could not read it because he did not have his reading glasses. Sgt. Esmond offered to read it to Plaintiff.

Plaintiff asked Sgt. Esmond if he would receive a 114D lock-up hearing (an administrative review normally held within 72 hours to determine if evidence is sufficient to return the accused in Ad-Seg) and be allowed to present evidence. Sgt. Esmond stated, "They don't do that anymore but you will be seen by the Institutional Classification Committee." (ECF No. 1 at 13:18-20.) Plaintiff indicated to Sgt. Esmond that he thought the whole thing was bogus. Sgt. Esmond responded, "Maybe if you'd just told me something." (ECF No. 1 at 13:23.) Plaintiff replied, "There's nothing to tell you," and Sgt. Esmond said, "Well you're getting off my yard." (ECF No. 1 at 13:26.) Plaintiff was then transported to 4A facility and placed in Ad-Seg.

The following day, Plaintiff noticed that the lock-up order that Sgt. Esmond had Plaintiff sign now had check marks in boxes where previously there were none. It indicated that Plaintiff had waived his right to administrative review and witnesses, etc. Consequently, Plaintiff was denied review.

Later, Plaintiff was issued a CDCR Rules Violation Report (RVR) 115 charging him with battery on an inmate with great bodily injury. The RVR, authored by Sgt. Esmond, indicated that Sgt. Esmond charged Plaintiff after C/O Maciejewski informed him that Plaintiff had a cut and blood on his hand. Esmond also stated that he relied on a confidential informant who witnessed Plaintiff hit Mr. Hougland on the right side of his face with Plaintiff's right hand.

4

Because of the RVR and Plaintiff's placement in Ad-Seg, there is a required procedure that an Investigative Employee (IE) be assigned (who is charged with gathering evidence and questioning witnesses for the accused, in addition to performing investigative duties for the hearing officer). Plaintiff also requested and was assigned a Staff Assistant (SA) (whose duty it is to represent and articulate the accused's position and explain the process to the accused). The SA must also maintain confidentiality upon request, and is required to be present when the accused is contacted regarding any matter related to the charged offense.

When the RVR was issued on February 9, 2015, there was no 1030 form provided (the form noticing that a confidential informant was relied upon, which is required to be provided to the accused). Plaintiff was not provided a 1030 form until February 26, 2015.

Plaintiff was contacted by C/O Doe #1 (Nunez?) who told Plaintiff he would be acting as Plaintiff's assigned IE and asked Plaintiff if he was okay with that. (The accused in a disciplinary proceeding has a right to refuse initial appointment, with good cause). Plaintiff told Doe #1 that an SA was appointed and Plaintiff wished to have one present. Doe #1 said, "You're not getting one! Do you want me or not?" (ECF No. 1 at 16:14-16.) Plaintiff declined his services, to which he replied, "Well, I'm all you're getting!" (ECF No. 1 at 16:17-18.) Plaintiff asked for an alternative IE, and Doe #1 left.

Another C/O arrived and stated, "Well, I'm your new IE since you wouldn't take my partner," adding, "You should've accepted him 'cause with me you ain't gettin' shit." (ECF No. 1 at 16:25-26.) Plaintiff requested to see a sergeant, and the C/O left. Plaintiff submitted a written statement to C/O Doe #1, as Doe #1 told Plaintiff that was his only alternative.

Plaintiff was not contacted by an SA regarding the RVR. However, he received a 128b Chrono (information chrono) on February 11, 2015, indicating that he had been assigned Officer Lima as IE, stating that Officer Lima had contacted Plaintiff and performed all of the required functions as the assigned IE. Plaintiff did not know Officer Lima and had never met with him. That same day, Plaintiff informed Correctional Counselor Roberts, via form 22 inmate request, of the falsified information.

///

Seven or eight days later, Plaintiff received the finalized copy of the IE report, which indicated that Plaintiff had requested no witnesses, made no statement, and offered no objection to Doe #1 as the IE. The report further indicated that C/O Lima was present to act as Plaintiff's assigned SA. In fact, the interview described by Doe #1 had never taken place. Plaintiff then contacted Chief Deputy Warden Gutierrez via form 22 to inform him of the improprieties, but Gutierrez did not respond. Plaintiff also submitted a complaint to the CDCR ombudsman and was contacted two weeks later by State Ombudsman Kerin Ritcher. Plaintiff informed Ritcher of the improprieties and gave her documentation. Ritcher conducted an investigation and found that the documents were falsified. Ritcher contacted C/O Lima who at first denied, but then admitted, that his signature was forged on the 128b Chrono. Lima told her that he was not even on duty the date and time indicated on the 128b Chrono, and also did not witness the IE interview as C/O Doe #1 attested.

On March 16, 2015, Chief Deputy Officer (CDO) T. Haak was notified of this activity, and instead of dismissing the RVR, ordered it reissued to be heard on April 15, 2015. In the modification order, CDO Haak claimed the reason for the reissue of the RVR was a due process violation as a result of CDO Haak's failure to consider assignment of a SA. CDO Haak knew this was not true because Ritcher and Plaintiff both informed him in writing of the staff misconduct.

With the issue of the RVR, new time constraints applied. Time constraints for hearing the RVR is normally 30 days after service, and should be served within 15 days, for a total of 45 days. However the rehearing never took place. A mock hearing was conducted by Lt. Machado. It consisted of Machado arriving at Plaintiff's cell door and announcing that he was summarily finding Plaintiff guilty. Plaintiff asked, "Based on what?" (ECF No. 1 at 20:10.) Machado said, "Based on the reports," and Plaintiff responded, "But the reports were falsified!" (ECF No. 1 at 20:10-12.) Plaintiff told Machado that it had already been proven and gave Machado the statement he had prepared.

Three and a half months passed with no attempt to adjudicate the RVR and no notice explaining the reason for the delay. Plaintiff had been in Ad-Seg eight months, and all of his

attempts to receive redress through the appeals process were thwarted, so Plaintiff filed a habeas corpus petition in Superior Court. About two weeks later, the RVR was re-re-issued, for the third time. The modification order dated July 28, 2015, was authored by C. Schuyler, the current CDO. It stated as the reason for the re-re-issue was the disciplinary server's (Hunley) failure to provide Plaintiff with a 1030 form. When Hunley served Plaintiff with the re-re-issue, he made issue of Plaintiff's petition to the court, stating, "Yeah, we're aware of your petition to the court." (ECF No. 1 at 21:22-23.) Hunley then asked Plaintiff three times in succession, "Do you wish to waive your hearing pending D.A. referral?," apparently indicating that Plaintiff might be prosecuted for pursuing legal remedies for the violation of his rights. (ECF No. 1 at 21:25-27.) Hunley's question was apparently meant to intimidate, as notice had already been provided to Plaintiff that no referral was made. When asked whether referral was made warranting such postponement, Hunley said No, "But I have to ask." (ECF No. 1 at 22:10.) The 1030 form provided by Hunley this time differed substantially from the 1030 provided initially on March 26, 2015. It was apparent that it was falsified. It contained entirely different information and was signed by C/O Hunley instead of Sgt. Esmond, and incredibly it named as the provider of the information the alleged victim, Mr. Hougland. Plaintiff believes this was done intentionally to cause Plaintiff to be targeted. Plaintiff alleges that it is a pattern and practice at CCI to manufacture evidence and cause physical abuse.

Plaintiff requests monetary damages, injunctive relief, attorney's fees, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386,

393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)); <u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618 (1979); <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." <u>Id</u>.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see also</u> <u>Marsh v. Cnty. of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. <u>Due Process – Administrative Segregation</u>

The Due Process Clause protects against the deprivation of liberty without due process of law. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. <u>Id.</u> Liberty interests may arise from the Due Process Clause itself or from state law. <u>Id.</u>

///

The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff alleges that he was placed in Ad-Seg on February 1, 2015, and detained there while awaiting a disciplinary hearing after being accused of assaulting another inmate. Plaintiff alleges that he was completely innocent of this charge and that any evidence was fabricated. Plaintiff filed the Complaint commencing this action in state court on September 29, 2015, when he had been detained in Ad-Seg in solitary confinement for approximately eight months. Plaintiff alleges that he suffers from spinal degeneration and was forced to sleep on mattresses "in advance state of disrepair." (ECF No. 1 at 23:26-27.) These allegations do not rise to the level of an atypical and significant hardship to establish the existence of a protected liberty interest in remaining free from Ad-Seg. A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86; see also Keenan v. Hall, 83 F.3d 1083, 1088–89 (9th Cir. 1996). It is true that

"[*s*]*ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." Chappell v. Mandeville 706 F.3d 1052, 1061 (9th Cir. 2013) (citing Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321 (1991)). But this only applies when the conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets." Chappell at 1061. Plaintiff has not alleged the deprivation of any such need here. Moreover, Plaintiff does not allege any specific injury caused by conditions in Ad-Seg. The fact that conditions in in Ad-Seg do not mimic those afforded the general population does not trigger due process concerns. Therefore, Plaintiff fails to state a cognizable claim for violation of his rights to due process based on detention in Ad-Seg.

### B. Due Process -- False Disciplinary Report

Plaintiff alleges that was charged with a disciplinary violation at CCI for assaulting another inmate, and Defendants made the charges against him knowing they were false.

These allegations, even if true, do not raise a constitutional claim because there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against being falsely accused of a disciplinary violation.

### C. Threats

Plaintiff alleges that C/O Hunley threatened Plaintiff with prosecution by the District Attorney. Plaintiff is informed that verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); accord Keenan, 83 F.3d at 1092, and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, Plaintiff fails to state a claim based on verbal harassment or threats.

### D. Tom Bane Civil Rights Act

Plaintiff claims violations under the Tom Bane Civil Rights Act, California Civil Code § 52. Plaintiff is informed that violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the court fails to find any cognizable federal claims in Plaintiff's Complaint. Therefore, Plaintiff's claim under the Tom Bane Civil Rights Act fails.

### E. Damages for Emotional Distress – Physical Injury Requirement

Plaintiff alleges that Defendants' conduct caused him to suffer mental and emotional distress. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or

///

punitive damages. Id. at 630. Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress unless he also shows a physical injury.

### F. Relief Requested

In addition to monetary damages, Plaintiff seeks attorney's fees and injunctive relief.

#### 1. Attorney's Fees

With regard to attorney fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . . " 42 U.S.C. § 1988(b). However, Plaintiff is not entitled to attorney's fees if he prevails in this action, because Plaintiff is representing himself. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

#### 2. Injunctive Relief

Plaintiff requests that Defendants be restrained from further use of false evidence, threats, harassment, harm, or retaliation against Plaintiff or any potential witnesses in this case.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Moreover, when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). The events at issue in this action allegedly occurred at CCI in Tehachapi, California, and Plaintiff is no longer incarcerated there. Based on the nature of the claims at issue in this action, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

## V. CONCLUSION AND ORDER

The court finds that Plaintiff's Complaint fails to state any claim upon which relief may be granted under § 1983. The court will dismiss the Complaint for failure to state a claim and give Plaintiff leave to file an amended complaint addressing the issues described above.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Accordingly, the court will provide Plaintiff an opportunity to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file the First Amended Complaint within thirty days.

The First Amended Complaint must allege facts showing what each named defendant did that led to the deprivation of Plaintiff's constitutional rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights by their actions. Id. at 676-77 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (no "buckshot" complaints). Plaintiff is not granted leave to add allegations of events occurring after the date he filed the Complaint, September 29, 2015.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend;

13

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Plaintiff is granted leave to file a First Amended Complaint curing the deficiencies identified by the court in this order, within **thirty (30) days** from the date of service of this order;

4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-01271-DAD-GSA-PC; and

5. If Plaintiff fails to file a First Amended Complaint within thirty days, this case shall be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: **August 22, 2017**  **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE